IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

COALITION FOR AN AIRLINE          §
PASSENGERS' BILL OF RIGHTS,       §
a/k/a FLYERSRIGHTS.ORG,           §
and KATHLEEN HANNI,               §
                                  §
            Plaintiffs,           §
                                  §     CIVIL ACTION NO. H-09-3305
v.                                §
                                  §
DELTA AIR LINES, INC. and         §
METRON AVIATION, INC.,            §
                                  §
            Defendants.           §

## MEMORANDUM OPINION AND ORDER

Coalition for an Airline Passengers' Bill of Rights, otherwise known as Flyersrights.org ("Flyersrights"), and Kathleen Hanni bring this action against Delta Air Lines, Inc. ("Delta") and Metron Aviation, Inc. ("Metron") alleging conspiracy and invasion of privacy related to the theft by Delta of e-mails and computer files from Hanni's personal computer. Pending before the court is Defendant Delta's Motion for Judgment on the Pleadings (Docket Entry No. 5) and Defendant Metron's Motion for Judgment on the Pleadings (Docket Entry No. 9). For the reasons explained below, the court will deny the defendants' motions.

## I.  Factual and Procedural Background

This action concerns an allegation by Hanni that Delta hacked into her personal computer to obtain computer files relevant to Hanni's work as the executive director of Flyersrights, an

organization focusing on the rights of airline passengers, and then shared the hacked files with Metron. Flyersrights is a registered non-profit organization with its principal place of business in Napa County, California.[1] Hanni is an individual residing in Napa County, California.[2] Delta is a Delaware corporation with its principal place of business in Atlanta, Georgia.[3] Metron is a Virginia corporation with its principal place of business in Dulles, Virginia.[4] Metron performs air traffic flow and surface operations management and analysis for the aviation industry.[5]

## A.    The Hacked Computer Files

Hanni founded Flyersrights in 2007 in order to advocate for the rights of airline passengers. In particular, Flyersrights has lobbied for Congress to pass legislation that would require airlines to provide passengers with food, water, access to restrooms, and the right to deplane during extended delays on tarmacs. Flyersrights attached to its Complaint two bills pending in Congress that would create an "Airline Passenger Bill of Rights."[6]

---

[1]Plaintiffs' Original Complaint, Docket Entry No. 1, ¶ 1.

[2]Id., ¶ 2.

[3]Id., ¶ 3.

[4]Id., ¶ 4.

[5]Defendant Delta Air Lines, Inc.'s Motion for Judgment on the Pleadings ("Delta's Motion"), Docket Entry No. 5, p. 10 n.3.

[6]Exhibits A and B to Plaintiffs' Original Complaint, Docket Entry No. 1.

Beginning in February 2009 Hanni exchanged information about delayed flights with Frederick J. Foreman, an engineer and the president of Mathematical Modeling, Inc., a firm that provides engineering analyses.[7]   At the time of his communication with Hanni, Foreman was working for Metron as its Principal Investigator into the causes of airport surface delays.[8]   Metron conducted this research on surface delays for the Federal Aviation Administration.[9]   Foreman's report, which he shared with Hanni, concluded that surface delays are caused in large part by airline practices such as over-scheduling flights.[10]

Flyersrights alleges that during the time Hanni was sharing information with Foreman her personal computer files and Flyersrights e-mail accounts were hacked.[11]   Flyersrights states that America Online, the service provider for Hanni's aol.com account, confirmed that the e-mail accounts were hacked.[12]   The Complaint states, "As a result of the hacking, spreadsheets, lists of donors, e-mails, Department of Transportation statistics and Hanni's personal files were redirected to an unknown location.

---

[7]Plaintiffs' Original Complaint, Docket Entry No. 1, p. 4.

[8]Delta's Motion, Docket Entry No. 5, p. 10.

[9]Id.

[10]Excessive Surface Delays Final Report, Exhibit C to Plaintiffs' Original Complaint, Docket Entry No. 1, p. iii.

[11]Plaintiffs' Original Complaint, Docket Entry No. 1, p. 4.

[12]Id.

Additionally, all of the information on Hanni's personal laptop was corrupted and rendered useless."[13]

Flyersrights alleges that Delta's involvement in the hacking is proven by information revealed in a confrontation between Foreman and Metron management shortly after the hacking. Flyersrights has provided an affidavit from Foreman stating:

> On Friday, September 25, 2009 at approximately 10:00 AM, I was escorted by two (2) Metron Aviation, Inc. employees into the office of Mr. James Gaughan, Senior Vice-President and General Manager. Mr. Gaughan asked me to go over the chronology of my interaction with the media. . . Mr. Gaughan proceeded to show me on his computer monitor what appeared to be hacked and stolen email communications within the last six (6) months or more between Kate Hanni and me, me and Gary Stoller of USA Today, me and Susan Stellin, a freelance reporter, and Kate Hanni and a number of people concerning the Passenger Bill of Rights, excessive surface delays, and other private communications. It was clear that they had email transactions from both of my private email accounts: Hotmail (eckmaster12@msn.com) and Yahoo (eckmaster@mmi-gov.com). It was also clear that these emails were from Kate Hanni's private and personal email account (katcrew4@aol.com), as well as from Gary Stoller's (gstoller@usatoday.com) private USA Today account, and Susan Stellin's (stellin@earthlink.net) private and personal email account. There were no emails communications from Metron Aviation's email system only communications from private accounts. James Gaughan told me that Delta Airlines were afraid that Kate Hanni was going to use the information that I gave her as fuel for getting the Passenger Bill of Rights passed in Congress. He said that Delta Airlines sent this information to them. I took this to mean that Delta Airlines and Metron Aviation both had a copy of these hacked and stolen email communications. Mr. Gaughan said that Delta was mad and upset that one of Metron Aviation's employees had provided Kate Hanni with this kind of information.[14]

---

[13] Id.

[14] Affidavit of Frederick Foreman, Exhibit D to Plaintiffs' Original Complaint, Docket Entry No. 1.

The meeting ended with Gaughan terminating Foreman.  Flyersrights argues that Metron's possession of the e-mails, which Metron claimed that it had obtained from Delta, proves that Delta was responsible for the hacking of Hanni's computer.

## B.   Delta's Explanation

Delta concedes that it possesses e-mails from Hanni's personal account and that it shared those e-mails with Metron, but argues that it obtained the e-mails by lawful means.  Delta has produced four  e-mails  that  Hanni  sent  from  her  personal  account (katcrew4@aol.com) to Monique Sears, the administrator of Mifnet, an aviation industry discussion group, on September 24, 2009.[15]  In addition to her work with Mifnet, Sears is a Director of Government Affairs for KLM Royal Dutch Airlines ("KLM").[16]  Paul Mifsud, the founder of Mifnet and the Vice-President of Government and Legal Affairs for KLM, has provided affidavit testimony that he received the e-mails from Sears.[17]  On September 25, 2009, Mifsud forwarded the e-mails to Alexander "Sascha" Van der Bellen of Delta.[18]  KLM and Delta are corporate partners in the SkyTeam Airline Alliance. Van der Bellen, Delta's Associate General Counsel and Managing

---

[15]Exhibits A-1, A-2, A-3, and A-4 to Delta's Motion, Docket Entry No. 5.

[16]Declaration of Paul V. Mifsud, Exhibit 1 to Delta's Motion, Docket Entry No. 5, ¶ 2.

[17]Id.

[18]Id.

Director -- Government Affairs, has provided affidavit testimony that he received the e-mails from Mifsud and forwarded them to four other Delta employees, including Andrea Newman, Senior Vice-President -- Government Affairs for Delta.[19]  Newman forwarded the e-mails to Neil Stronach, Senior Vice-President -- Operations Control for Delta, who in turn forwarded the e-mails to Lorne W. Cass, Delta's Director -- ATM & Industry Affairs.[20]  Cass then forwarded the e-mails to Metron's Carol Huegel.[21]  A copy of the e-mail to Huegel is attached to Cass's affidavit.  It shows that Cass sent the e-mail to Huegel on September 25, 2009, at 8:29 a.m., approximately an hour and a half before Foreman met with Gaughan concerning the e-mails.[22]

    To summarize, on September 24, 2009, Hanni forwarded four e-mail exchanges between herself and Foreman to Sears, who then forwarded the e-mails to Mifsud.  On September 25, 2009, Mifsud forwarded the e-mails to Delta's Van der Bellen, who forwarded the

---

    [19]Declaration of Alexander Van der Bellen, Exhibit 2 to Delta's Motion, Docket Entry No. 5, ¶ 2.

    [20]Declaration of Lorne W. Cass, Exhibit 3 to Delta's Motion, Docket Entry No. 5, ¶ 2.

    [21]Id. at ¶ 3.

    [22]E-mail from Lorne Cass to Carol Huegel, September 25, 2009, attached to Declaration of Lorne W. Cass, Exhibit 3 to Delta's Motion, Docket Entry No. 5.  The court assumes that the 8:29 a.m. time listed on the e-mail and the 10:00 a.m. time specified in Foreman's affidavit refer to the same time-zone, although that may not be correct.  The two events appear to have happened on the same morning.

messages to several Delta executives. At 8:29 a.m. the e-mails were forwarded to Metron's Huegel. At approximately 10:00 a.m. Gaughan confronted Foreman with several e-mails exchanged between Foreman, Hanni, and others, and then fired him. Delta contends that the e-mails with which Gaughan confronted Foreman were the four e-mails that Hanni had sent to Sears the previous day. Flyersrights disputes this contention and claims that Metron possessed e-mails from Hanni's personal accounts that were not included among the four e-mails Hanni sent to Sears.

## C.   The Four E-Mails

The four e-mails each contain an attachment file of Foreman's work. The attachments are: a slide presentation of Foreman's research on Excessive Surface Delays,[23] a text file entitled "Excessive Surface Delays Final Report,"[24] a spreadsheet showing Foreman's data on the numbers of passengers affected by excessive surface delays,[25] and a short text file entitled "Excessive Surface Delays Summary Report."[26] The e-mails also contain embedded messages showing prior correspondence between Foreman (using the e-mail addresses eckmaster12@msn.com and eckmaster@mmi-gov.com) and

---

[23]Exhibit A-1 attached to Delta's Motion, Docket Entry No. 5.

[24]Exhibit A-2 attached to Delta's Motion, Docket Entry No. 5.

[25]Exhibit A-3 attached to Delta's Motion, Docket Entry No. 5.

[26]Exhibit A-4 attached to Delta's Motion, Docket Entry No. 5.

Hanni (katcrew4@aol.com),[27] the freelance journalist Susan Stellin (stellin@earthlink.net),[28] and Gary Stoller of USA Today (gstoller@usatoday.com).[29] In other words, the e-mails provided by Delta include all of the specific names and addresses that Foreman identified in his affidavit attached to Plaintiffs' Original Complaint.

In response to Delta's disclosure of its possession of the four Hanni e-mails, Flyersrights has produced a second affidavit from Foreman that states:

> The emails attached as exhibits to Defendant Delta Air Lines, Inc.'s Motion for Judgment on the Pleadings are only a small portion of the emails Metron had in its possession. Metron had *at least ten times more emails* than the few emails Delta attached as exhibits, many of which were from Kate Hanni's personal email account. Metron claimed they received the emails from Delta Air Lines, Inc.[30]

Based on this statement, Flyersrights argues that it is irrelevant that Delta obtained some of Hanni's e-mails by legitimate means if Delta obtained other e-mails by illegitimate means.

Flyersrights and Hanni brought this action against Delta and Metron on October 13, 2009, alleging conspiracy and breach of

---

[27]Exhibits A-1, A-2, A-3, and A-4 attached to Delta's Motion, Docket Entry No. 5.

[28]Exhibit A-2 attached to Delta's Motion, Docket Entry No. 5.

[29]Exhibit A-3 attached to Delta's Motion, Docket Entry No. 5.

[30]Affidavit of Frederick Foreman, attached to Plaintiffs' Response to Defendant Delta Air Lines, Inc.'s Motion for Judgment on the Pleadings, Docket Entry No. 10.

privacy and seeking at least $1,000,000 in actual damages and
$10,000,000 in exemplary damages (Docket Entry No. 1).    On
November 9, 2009, Delta moved for judgment on the pleadings
pursuant to Federal Rule of Civil Procedure 12(c) (Docket Entry
No. 5).  Delta also challenges whether Flyersrights has standing to
bring this action.  On November 24, 2009, Metron joined Delta in
moving for judgment on the pleadings (Docket Entry No. 9).

## II.  Defendants' Rule 12(c) Motions

Delta and Metron have moved for judgment on the pleadings
under Federal Rule of Civil Procedure 12(c).  Delta argues that the
Plaintiffs' Complaint fails to state a plausible claim for either
invasion of privacy or conspiracy.  Metron's motion incorporates
Delta's motion and attachments.[31]

## A.    Standard of Review

A motion for judgment on the pleadings under Federal Rule of
Civil Procedure 12(c) is subject to the same standard as a motion
to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See Doe
v. MySpace, Inc., 528 F.3d 413, 418 (5th Cir.), cert. denied, 129
S.Ct. 600 (2008).  Federal Rule of Civil Procedure 12(b)(6) allows
dismissal if a plaintiff fails to state a claim upon which relief
may be granted.  See Bell Atlantic Corp. v. Twombly, 127 S.Ct.

---

[31]Defendant Metron Aviation, Inc. Motion for Judgment on the
Pleadings, Docket Entry No. 9, p. 1.

1955, 1974 (2007).  A Rule 12(b)(6) motion to dismiss requires the court to accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  See Doe, 528 F.3d at 418.  To defeat the motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S.Ct. at 1974.  Mere conclusory allegations are not sufficient.  Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).  "[A] formulaic recitation of the elements of a cause of action will not do."  Twombly, 127 S.Ct. at 1965. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has" failed to adequately state a claim.  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).

When evaluating a Rule 12(b)(6) motion, the court "must limit [its] inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint . . . [and] matters of which [it] may take judicial notice." Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1017-18 (5th Cir. 1996).  In Collins, 224 F.3d at 498-99, the Fifth Circuit also held that a district court may consider certain documents attached by a defendant to a motion to dismiss.  The Fifth Circuit has "restricted such consideration to documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim."  Scanlan v. Tex. A & M Univ., 343 F.3d 533, 536 (5th Cir.

-10-

2003) (citing <u>Collins</u>, 224 F.3d at 498-99); <u>see also</u> <u>Causey v.</u>
<u>Sewell Cadillac-Chevrolet, Inc.</u>, 394 F.3d 285, 288 (5th Cir. 2004)
("Documents that a defendant attaches to a motion to dismiss are
considered part of the pleadings if they are referred to in the
plaintiff's complaint and are central to her claim.").

**B.   Analysis**

    1.   <u>Flyersrights' Factual Allegations</u>

    The court must determine whether Flyersrights' Complaint
states a plausible claim for which relief may be granted.   <u>See</u>
<u>Twombly</u>, 127 S.Ct. at 1974.   The relevant factual allegations in
Flyersrights' Complaint are:

> 8.   . . . Flyersrights has been aggressively advocating
> for Congress to pass legislation that would require
> airlines to recognize airline passengers' rights during
> tarmac delays. . .
>
> 10.   ***. . . If the bills are passed, airlines stand to
> lose over $40,000,000.00 in lost revenues and millions
> more in accommodations for flyers deplaned during delays.***
>
> . . .
>
> 12.   During the time Hanni was sharing information with
> Foreman, Hanni's personal computer files and Flyersrights
> e-mail accounts were hacked.   America Online ("AOL"),
> Hanni's e-mail service provider, confirmed the e-mail
> accounts were hacked.   As a result of the hacking,
> spreadsheets, lists of donors, e-mails, Department of
> Transportation statistics and Hanni's personal files were
> redirected to an unknown location.   Additionally, all of
> the information on Hanni's personal laptop was corrupted
> and rendered useless.
>
> 13.   On September 25, 2009, Metron executives confronted
> Foreman with the stolen e-mails and claimed Delta, a
> client of Metron, was angry about Hanni getting
> information that would help pass the Airline Passenger

Bill of Rights.  Metron had the stolen e-mails and files from AOL and Hanni's personal computer in its possession.

14.  When Foreman asked Metron how Metron obtained the information, ***Metron claimed that Delta had provided them with the stolen e-mails***.  Confirming Metron's claims, the screenshots of the stolen e-mails presented to Foreman were from Delta.  Foreman was fired by Metron the same day.[32]

In evaluating this motion, the court is required to accept Flyersrights' factual allegations as true and to draw all reasonable inferences in the plaintiffs' favor.  See Doe, 528 F.3d at 418.  Under this standard, the court concludes that Flyersrights has presented a plausible claim for relief.

Plaintiffs allege that Delta committed the tort of invasion of privacy by hacking into Hanni's personal e-mail account and stealing e-mails and computer files relevant to her work for Flyersrights.  It is not clear what state's law governs this dispute, but for purposes of the present motion only the court will assume that Texas law governs.[33]  The elements of a cause of action for invasion of privacy by intrusion on seclusion or private affairs are:  (1) the defendant intentionally intruded on the plaintiff's solitude, seclusion, or private affairs, and (2) the intrusion would be highly offensive to a reasonable person.  Valenzuela v. Aquino, 853 S.W.2d 512, 513 (Tex. 1993).  The court

_____

[32]Plaintiffs' Original Complaint, Docket Entry No. 1, ¶¶ 8, 10, 12-14 [emphasis in the original].

[33]Delta analyzes the invasion of privacy claim under Texas law. Plaintiffs do not argue that another state's law governs the claim.

concludes that hacking into a person's private computer and stealing personal correspondence would represent an intentional intrusion on the victim's private affairs and that such an intrusion would be highly offensive to a reasonable person. The key question then is whether the facts alleged by plaintiffs could allow a reasonable fact-finder to conclude that Delta hacked into Hanni's computer.

The facts presented by plaintiffs are as follows. First, at the time of the hacking Hanni and Flyersrights were lobbying for legislation that Delta had an economic incentive to oppose. Second, after Hanni began exchanging e-mails with Foreman, her computer was hacked into and files were stolen. Third, in Foreman's meeting with Gaughan, Foreman saw that Metron had possession of "the stolen e-mails and files from AOL and Hanni's personal computer."[34]   Fourth, Metron told Foreman that they had received the e-mails from Delta. A reasonable person hearing these facts could reach the conclusion that it was more likely than not that it was Delta who hacked into Hanni's computer and stole her files.   Delta had a motive to steal the files and, as a technologically sophisticated corporation, it is plausible that it had the means to do so. In the absence of any other explanation for why Metron and Delta had possession of Hanni's personal correspondence, a reasonable person could conclude that the most

_____

[34]Plaintiffs' Original Complaint, Docket Entry No. 1, ¶ 13.

logical explanation was that Delta, or a party working with Delta, stole the files.

2.   <u>Delta's Explanation</u>

Delta argues that there is another explanation that makes the theft-by-Delta hypothesis implausible.  It argues that the e-mails Foreman saw were the e-mails that Hanni sent to the Mifnet discussion group on September 24, 2009, which were forwarded to a chain of people at Delta and eventually reached Metron on September 25, 2009.  Since Delta acquired these four e-mails through legitimate means, and since the e-mails contain all of the specific names and e-mail addresses specified in Foreman's affidavit, Delta argues that a jury could not reasonably conclude that Delta more likely than not was the culprit in the hacking of Hanni's computer.

Delta's argument raises two questions, the first a question of law and the second a question of fact.  The legal question is whether the court may consider Delta's affidavits and attachments in a Rule 12(c) motion.  Ordinarily, a court evaluating a Rule 12(c) motion "must limit [its] inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint . . ."  <u>Lovelace</u>, 78 F.3d at 1017-18.  Delta's attachments, however, may fall under the exception identified by the Fifth Circuit for documents attached to the defendant's motion to dismiss and "that are referred to in the plaintiff's complaint

and are central to the plaintiff's claim." <u>Scanlan</u>, 343 F.3d at
536.  If the four e-mails attached to Delta's motion are, in fact,
the same e-mails that Foreman saw in his meeting with Gaughan, then
they are referred to in the Plaintiffs' Complaint and are central
to the plaintiffs' claim, and therefore it would be appropriate to
consider them in a Rule 12(c) motion.  The answer to the legal
question, however, depends upon the answer to the fact question:
Are the four e-mails attached to Delta's motion the same e-mails
that Foreman saw in his meeting with Gaughan?

Logic suggests that they could be.  They include all of the
names and e-mail addresses specifically mentioned by Foreman in his
affidavit; Gaughan called the meeting with Foreman approximately an
hour and a half after Delta's Cass sent the message to Metron's
Huegel; and judging from the content of the messages --
correspondence sharing Foreman's research with journalists and a
political activist concerning an issue sensitive to Metron's
clients -- a reasonable juror could conclude that Metron may have
terminated Foreman on the basis of the four e-mails alone.

Comparing the four e-mails with Foreman's description of what
he saw in his meeting with Gaughan, it is not clear whether the
four e-mails necessarily include every e-mail that Foreman saw.
Foreman's affidavit states:

> Mr. Gaughan proceeded to show me on his computer monitor
> what appeared to be hacked and stolen email
> communications within the last six (6) months or more
> between Kate Hanni and me, me and Gary Stoller of USA

> Today, me and Susan Stellin, a freelance reporter, and
> Kate Hanni and a number of people concerning the
> Passenger Bill of Rights, excessive surface delays, and
> other private communications.[35]

While the four messages do include correspondence with Hanni,

Stoller, and Stellin, the affidavit mentions communications between

"Kate Hanni and a number of people concerning the Passenger Bill of

Rights, excessive surface delays, and other private

communications."  The phrases "a number of people" and "other

private communications" suggest that the messages Foreman saw

included names other than those of Foreman, Hanni, Stellin, and

Stoller, but the only other name that appears in the four messages

is the e-mail address for Monique Sears.  Judging from Foreman's

affidavit and the e-mails attached to Delta's motion, there is no

way to be sure whether the four e-mails produced by Delta were the

only messages that Foreman saw in his meeting with Gaughan, or

whether Foreman saw other personal correspondence not included

among Delta's attachments.  Flyersrights has produced a second

affidavit from Foreman addressing this question.

    3.   <u>Foreman's Second Affidavit</u>

Foreman's second affidavit states definitively that the four

e-mails produced by Delta do not encompass all of the e-mails he

saw during his meeting with Gaughan.  He states:

---

[35]Affidavit of Frederick Foreman, Exhibit D to Plaintiff's
Original Complaint, Docket Entry No. 1.

> The emails attached as exhibits to Defendant Delta Air Lines, Inc.'s Motion for Judgment on the Pleadings are only a small portion of the emails Metron had in its possession.  Metron had *at least ten times more emails* than the few emails Delta attached as exhibits, many of which were from Kate Hanni's personal email account. Metron claimed they received the emails from Delta Air Lines, Inc.[36]

This statement, if accepted as true, would bring the analysis essentially back to consideration of the Plaintiffs' Complaint alone:  If Delta had possession of Hanni's personal correspondence with no explanation of how it came into possession of it, a reasonable juror could conclude that the probable explanation for Delta's possession of the files was that Delta hacked into Hanni's computer.  That analysis, however, depends on whether the court considers the second affidavit.  The second affidavit does not appear to be appropriate for consideration in a Rule 12(c) motion. It is not part of the Original Complaint, nor does it fall under the limited exception for defense attachments identified by the Fifth Circuit in Collins, 224 F.3d at 498-99.  What is not clear is whether the court may consider the second affidavit in determining whether Delta's attachments fall under the Collins exception.

The court concludes that it is not proper to consider either the Delta attachments or Foreman's second affidavit in this Rule 12(c) motion.  Even without considering the second affidavit, it is not clear that Delta's attached e-mails include everything

---

[36]Affidavit of Frederick Foreman, attached to Plaintiffs' Response to Defendant Delta Air Lines, Inc.'s Motion for Judgment on the Pleadings, Docket Entry No. 10.

that Foreman saw in his meeting with Gaughan.  Presenting only a partial, perhaps misrepresentative, sample of the e-mails Foreman saw would not be in keeping with the Collins exception, which is not applicable when there is confusion regarding which documents are referred to in the plaintiff's complaint.  Furthermore, Delta's attachments contain affidavits and e-mails by Delta executives that are not referred to in the Plaintiffs' Complaint, and which therefore would not be included under the Collins exception in any event.

For these reasons, the court will consider only the Plaintiffs' Complaint in ruling on the 12(c) motions.  As discussed above, the Complaint states facts from which a reasonable juror could conclude that the most logical explanation is that Delta hacked into Hanni's computer.  Therefore, the Complaint states a plausible claim for which relief may be granted.

In the alternative, the court could treat the defendants' Rule 12(c) motions as Rule 56 summary judgment motions.  Federal Rule of Civil Procedure 12(d) provides:

> (d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Matters outside the pleadings clearly have been presented to the court.  The court has excluded them for purposes of the Rule 12(c) motions; but if, in the alternative, the court were to consider

both the Delta attachments and the second Foreman affidavit, the court would consider the motions as Rule 56 motions.  Whether the court treats the motions as Rule 12(c) motions or as Rule 56 motions, however, the result will be the same.

    4.   <u>The Standard of Review Under Rule 56</u>

       Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2511 (1986).  In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S.Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

       Under this standard there is a genuine dispute about material facts.  Because the parties have submitted conflicting evidence concerning which e-mails Foreman may have seen in Gaughan's office, the court must resolve the conflict in favor of the nonmoving party, Flyersrights.  <u>Little</u>, 37 F.3d at 1075.  Therefore, for purposes of this motion the court must accept the assertions in

Foreman's second affidavit as true.  If, as Foreman asserts, Metron possessed e-mails from Hanni's personal account that were not included in the four e-mails that Hanni sent to Mifnet, a fact question exists concerning how Metron came to possess those e-mails.  Since the manner in which Delta and Metron came to possess the e-mails is at the heart of this dispute, the fact question is material.  A jury that accepted Foreman's assertions as true could conclude, in the absence of any better explanation for how Metron came to possess the unexplained e-mails, that Delta had hacked into Hanni's computer.  Therefore, the dispute is genuine, and summary judgment is inappropriate.

**C.   Plaintiffs' Conspiracy Claim**

Delta argues that the plaintiffs' conspiracy claim should be dismissed because the plaintiffs have failed to allege facts supporting a plausible conspiracy claim.  Delta argues that "Plaintiffs proffer no factual allegations to support their baseless conclusion that an agreement existed between the Defendants.  Specifically, Plaintiffs fail to specify the time, place, or persons involved in forming the agreement."[37]

1.   <u>Applicable Law</u>

In Texas a civil conspiracy is a combination "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."  <u>Lane v. Halliburton</u>, 529 F.3d 548, 564 (5th Cir. 2008)

---

[37]Delta's Motion, Docket Entry No. 5, p. 20.

(citing <u>Eagle Props., Ltd. v. KPMG Peat Marwick</u>, 912 S.W.2d 825, 828 (Tex. App. -- El Paso, 1995)).  The elements of conspiracy are: (1) two or more persons; (2) an end to be accomplished; (3) meeting of the minds on the end or course of action; (4) one or more overt, unlawful acts; and (5) proximately resulting in injury.  <u>Arthur W. Tifford, PA v. Tandem Energy Corp.</u>, 562 F.3d 699, 709 (5th Cir. 2009).

    2.  <u>Analysis</u>

Delta challenges whether Flyersrights has alleged facts sufficient to make it plausible that Delta and Metron had a meeting of the minds over an unlawful course of action.  Flyersrights alleges that "Delta conspired with Metron (or others) to obtain Plaintiffs' emails and computer files.  Delta then provided Metron with the illegally obtained emails and files from Plaintiffs' computer and AOL account."[38]

The court concludes that the plaintiffs have alleged facts that make the existence of a conspiracy plausible.  First, as discussed above, plaintiffs have alleged facts from which a fact-finder could conclude that Delta hacked into Hanni's computer.  Second, plaintiffs allege that Delta shared the e-mails with Metron.  Third, after receiving the e-mails Metron fired Foreman.  A jury could conclude from the fact that Metron fired Foreman after receiving the e-mails that Delta and Metron had a meeting of the

---

[38]Plaintiffs' Original Complaint, Docket Entry No. 1, ¶ 17.

minds regarding their opposition to Flyersrights' efforts, and that Metron was willing to use Delta's illegally obtained information to further Delta's purposes.

**D.   Conclusion**

Because Plaintiffs' Complaint states plausible claims for both invasion of privacy and conspiracy, defendants' Rule 12(c) motions for judgment on the pleadings will be denied.   If, in the alternative, the court were to construe the Rule 12(c) motions as Rule 56 summary judgment motions, the court would conclude that there is a genuine dispute about how Delta and Metron came into possession of Hanni's e-mails, and would therefore deny summary judgment.

**III.   <u>Defendants Challenge Flyersrights' Standing</u>**

Delta argues that Flyersrights lacks standing to bring claims against the defendants based on the facts alleged.   Specifically, Delta argues that Flyersrights has not suffered any harm from the alleged actions, that if Flyersrights did suffer any harm it was not caused by Delta's actions, and that in any event a favorable verdict could not redress Flyersrights' claimed harm.[39]

**A.   Standing**

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III."   <u>Lujan   v.</u>

---

[39]Delta's Motion, Docket Entry No. 5, pp. 22-25.

<u>Defenders of Wildlife</u>, 112 S.Ct. 2130, 2136 (1992).  To establish standing "a plaintiff must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling.  [T]he critical question is whether [the] petitioner has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction."  <u>Horne v. Flores</u>, 129 S.Ct. 2579, 2592 (2009) (citing <u>Lujan</u>, 112 S.Ct. at 2136).  Failure to establish any one of the three standing requirements deprives a federal court of subject-matter jurisdiction to hear a lawsuit.  <u>Ford v. NYLCare Health Plans of Gulf Coast, Inc.</u>, 301 F.3d 329, 332 (5th Cir. 2002).  At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice.  <u>Lujan</u>, 112 S.Ct at 2137.

**B.   Analysis**

Delta first argues that Flyersrights cannot meet the actual injury requirement for standing because Flyersrights' injury, the failure of Congress to pass a Passenger's Bill of Rights, is insufficient to establish standing in a number of ways, perhaps most significantly because no entity has a legally protected right to the passage of desired legislation.  Delta's argument construes Flyersrights' potential harm too narrowly and ignores the text of the Complaint.  Flyersrights' Complaint reads:

> 12.  During the time Hanni was sharing information with Foreman, Hanni's personal computer files and Flyersrights

> e-mail accounts were hacked. . . . As a result of the
> hacking, spreadsheets, lists of donors, e-mails,
> Department of Transportation statistics and Hanni's
> personal files were redirected to an unknown location.
> Additionally, all of the information on Hanni's personal
> laptop was corrupted and rendered useless.[40]

The Complaint clearly alleges that Hanni's Flyersrights e-mail
account was hacked, that files important to the organization such
as donors lists were taken, and that the information on the
computer was rendered useless. Since Hanni is the Executive
Director of the organization, it is logical to conclude that
someone stealing and corrupting Flyersrights files on Hanni's
computer could harm the organization. The loss of the donor list
alone could harm the organization's relationship with its members
and could impede fund-raising. The hacking inflicted a concrete,
particularized, and actual injury on both Hanni and Flyersrights.

Second, Delta argues that "a causal connection does not exist
between the referral of the Bill to the Congressional Committees
and the alleged unauthorized access of Hanni's e-mail account and
computer."[41] This argument again makes the faulty assumption that
the only harm alleged by Flyersrights is the failure of Congress to
pass the Passenger Bill of Rights. What Flyersrights must allege
to attain standing is that its injury is fairly traceable to the
defendant's challenged action. Flyersrights alleges that Delta

---

[40]Plaintiffs' Original Complaint, Docket Entry No. 1, ¶ 12.

[41]Delta's Motion, Docket Entry No. 5, p. 23.

-24-

hacked into Hanni's computer and stole or corrupted Flyersrights'
files on the computer.  This allegation is sufficient at the
pleading stage to meet the second element required for standing.

Third, Delta argues that a favorable verdict cannot redress
Flyersrights' claimed harm because a verdict cannot ensure that the
Bill will pass in both the House and Senate and be signed into law.
This argument again relies on the faulty premise that the only
injury alleged by Flyersrights is its inability to get the
Passenger Bill of Rights passed.  Flyersrights' alleged injury is
more accurately characterized as the loss of important computer
files.  A favorable verdict can provide Flyersrights with monetary
compensation for the loss of its computer files and the attendant
consequences of that loss.  Therefore, Flyersrights has pleaded a
redressable injury.

## C.   Conclusion

Since Flyersrights' Complaint alleges an injury that is
sufficient to establish standing under <u>Lujan</u>, the court will deny
Delta's challenge to Flyersrights' standing.

## IV.   <u>Conclusion and Order</u>

For the reasons explained above, the court concludes that the
Plaintiffs' Complaint states a claim upon which relief may be
granted.  The court furthermore concludes that Flyersrights has
standing to bring these claims against Delta and Metron.

Therefore, Defendant Delta's Motion for Judgment on the Pleadings (Docket Entry No. 5) and Defendant Metron's Motion for Judgment on the Pleadings (Docket Entry No. 9) are **DENIED.**

      **SIGNED** at Houston, Texas, on this 28th day of January, 2010.

_____<br>
SIM LAKE<br>
UNITED STATES DISTRICT JUDGE